UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SONYA UNDERWOOD,<br>    *Plaintiff*,<br><br>v.<br><br>RTX CORP. f/k/a RAYTHEON<br>TECHNOLOGIES CORP.,<br>    *Defendant*. | 3:23-CV-310 (SVN)<br><br><br><br><br><br>August 29, 2024 |

**<u>RULING AND ORDER ON DEFENDANT'S MOTION TO DISMISS</u>**

Sarala V. Nagala, United States District Judge.

In this employment discrimination action, Plaintiff Sonya Underwood alleges that her current employer, RTX Corporation, violated her rights under 42 U.S.C. § 1981 by discriminating against her on the basis of her race and by retaliating against her for a complaint concerning that alleged discrimination. Defendant seeks to dismiss both of Plaintiff's claims, arguing that Plaintiff has failed to state a claim for either discrimination or retaliation. For the reasons described below, the Court agrees with Defendant. The complaint is thus DISMISSED with leave to amend.

    **I.    FACTUAL BACKGROUND**

The complaint contains the following allegations, which are accepted as true for the purpose of this motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff is a black, female employee who has worked at Pratt & Whitney, a subsidiary of RTX Corporation, since 2019. Second Amended Complaint ("SAC"), ECF No. 19, ¶ 5. Plaintiff worked as an SEV[1] Engine Quality Inspector, which included responsibilities such as troubleshooting aircraft engine part defects and facilitating communications with suppliers to resolve issues. *Id.* ¶¶ 7–8. Plaintiff was qualified for this role. *Id.* ¶ 9.

---

[1] "SEV" is not defined in the SAC.

As soon as she began working for Defendant, Plaintiff was excluded from joining and participating in projects, unlike her mainly white, male coworkers. *Id.* ¶ 11. Plaintiff inquired about her treatment to her supervisor, who stated that everything would "work out" and "the men will come around" to including Plaintiff in projects. *Id.* ¶ 12. Plaintiff alleges, however, that the other employees would disregard her input and, on one occasion, when Plaintiff approached one of the Lead Engineers regarding a defect that she noticed, the Lead Engineer became hostile and angry. *Id.* ¶¶ 15–16. When Plaintiff proposed her own project, her white male colleagues took over the project for themselves and excluded her. *Id.* ¶ 18.

Defendant designated Plaintiff and four white team members as "surplus in need" employees in September 2020. *Id.* ¶¶ 21–23. "Surplus in need" employees are reassigned to units with employee shortages; Plaintiff was moved from the SEV unit in Middletown to a unit in East Hartford, where she was paid less and given fewer material job responsibilities. *Id.* ¶¶ 22–24. After a few months as a "surplus in need" employee, Plaintiff noticed that the white SEV coworkers had been removed from the "surplus in need" designation. *Id.* ¶ 26. Coworkers explained to Plaintiff that Defendant's Human Resources department had assisted the other "surplus in need" employees with relocation within the company. *Id.* ¶¶ 26–27. Plaintiff alleges that she, likewise, reached out to Human Resources, but was essentially told to "just go online and apply and something [will] eventually come up." *Id.* ¶ 29. While Plaintiff applied for ten positions with Defendant for which she was qualified, she only received one interview and did not advance in the candidate search afterward. *Id.* ¶ 30. The last coworker to leave "surplus in need" status left in February of 2021, *id.* ¶ 31, but Plaintiff remains in that status to this day, *id.* ¶ 2.

In East Hartford, Plaintiff worked the second shift and shared a workstation with a white male coworker, Joe,[2] who worked the first shift. *Id.* ¶¶ 32–33. While Plaintiff and Joe's hours did not overlap, they shared the same computer, keyboard, mouse, chair, desk, and office supplies at their workstation. *Id.* ¶ 34. Once around March of 2021 and again around June of 2021, Plaintiff noticed that her computer mouse was missing when she arrived to work, and she reported the missing equipment to her supervisor. *Id.* ¶¶ 35–38. In July 2021, Plaintiff found the workstation completely empty aside from garbage left on the desk, with the chair, computer, keyboard, mouse, and other supplies nowhere to be found. *Id.* ¶ 41. Following this incident, Plaintiff alleges that one of her coworkers told her that Joe had removed everything from the workstation because he did not want to share a desk and computer equipment with a black person. *Id.* ¶ 47. Plaintiff reported this incident to her supervisor, who promised to "take it to management." *Id.* ¶ 48.

Around September 2021, Plaintiff took approved leave under the Family Medical Leave Act ("FMLA"). *Id.* ¶ 53. During her FMLA leave, Plaintiff contacted Defendant multiple times to inquire about the status of her race discrimination complaint against Joe and to request a meeting with management, but Defendant did not respond to her requests for a meeting. *Id.* ¶¶ 53–55.

While she was on FLMA leave, Plaintiff applied for and received a scholarship sponsored by Defendant to work on a private jet engine. *Id.* ¶ 58. It was customary for such a scholarship to be presented at an awards ceremony and for Defendant to pay for the travel necessary to fulfill the scholarship opportunity. *Id.* ¶ 59. Defendant refused Plaintiff's request for an awards ceremony, stating falsely that such ceremonies were only for executive employees—despite that two white female colleagues of Plaintiffs who were not executive-level employees were presented

---

[2] Joe's last name is not alleged in the SAC. *See id.* ¶ 33.

3

scholarships at a ceremony. *Id.* ¶¶ 59–62. Defendant also paid for these two employees' travel expenses, but denied Plaintiff's request for travel reimbursement. *Id.* ¶¶ 62–63.

In April of 2022, Defendant's management finally arranged a telephone call for Plaintiff to speak to the company's ethics team about Joe's behavior towards her. *Id.* ¶ 64. The next month, Defendant notified Plaintiff by letter that the company's investigation could not verify Plaintiff's allegations of racial discrimination and harassment. *Id.* ¶¶ 64–65. Plaintiff's supervisor had reported that her workstation was moved as part of a larger relocation process, which Plaintiff alleges is a lie intended to cover up Joe's actions. *Id.* ¶¶ 66–68.

At an unspecified time during Plaintiff's FMLA leave, she alleges that Defendant incorrectly recorded her as "absent without leave" for forty days in retaliation for her July 2021 complaint concerning Joe's actions. *Id.* ¶¶ 69–70. Following the end of Plaintiff's FMLA leave in September of 2022, she alleges that she was afraid to return to work because she felt that Defendant would not make efforts to protect her from Joe's racial hostility towards her. *Id.* ¶ 72. Plaintiff obtained a doctor's note approving her to return to work no sooner than October 8, 2022, and Defendant's Human Resource department allowed Plaintiff to take additional time off. *Id.* ¶¶ 73, 75. Although she requested that Defendant ensure that she would not have to interact with Joe following her return, she has allegedly encountered Joe multiple times since she returned to work in October of 2022. *Id.* ¶¶ 83–84.

Once Plaintiff returned to work, Defendant began retaliating against her for complaining about Joe's alleged racial discrimination, including by purposely preventing Plaintiff from being eligible for overtime hours by failing to notify her that she needed to take a refresher course to be eligible for overtime pay. *Id.* ¶¶ 77–78.

4

In January of 2023, Plaintiff took approved COVID leave for eight days. *Id.* ¶ 80. Defendant wrongfully recorded her as "absent without pay" for seven of those eight days. *Id.* By incorrectly recording Plaintiff's leave status as "absent without leave" during her FLMA leave and "absent without pay" during her COVID leave, Defendant laid the groundwork for disciplining, terminating, or refusing to promote Plaintiff. *Id.* ¶ 81.

Plaintiff is still in "surplus in need" status, which she alleges is continued retaliation against her. *Id.* ¶ 85.

## II. PROCEDURAL BACKGROUND

Plaintiff filed her initial complaint *pro se*, alleging discrimination based on her race, color, sex, and age. *See* ECF No. 1. U.S. Magistrate Judge Vatti recommended that complaint be dismissed. ECF No. 9. Plaintiff objected to the recommended ruling and filed an amended complaint before the Court (Dooley, J.) took action on the recommended ruling. *See* ECF Nos. 12, 14. Judge Dooley then adopted the recommended ruling, accepted the amended complaint, and directed Magistrate Judge Vatti to conduct an initial review of the amended complaint. ECF No. 14. Magistrate Judge Vatti again recommended dismissal; Judge Dooley adopted his recommendation but allowed Plaintiff another opportunity to amend her complaint because Plaintiff averred that, with the assistance of the Federal Pro Se Program, she believed she could state a viable claim. ECF Nos. 16, 18.

Plaintiff then filed the operative second amended complaint, and the case was transferred to the undersigned. ECF No. 19. Defendant has now moved to dismiss the SAC pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff failed to plausibly state a claim upon which relief could be granted and that she should not be granted leave to amend because she has had previous opportunities to amend her complaint. Def.'s Mot. to Dismiss, ECF No. 29.

5

### III.     LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted. When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.* In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief*." Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted).

The Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008), and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

These pleading standards apply to self-represented parties. It is true that Courts are under an obligation to extend "special solicitude" to *pro se* litigants and ought to read their pleadings "to raise the strongest arguments they suggest." *Fowlkes v. Ironworkers Local 40*, 790 F.39 378, 387 (2d Cir. 2015) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)) (internal quotation marks omitted).[3] But at the same time, a *pro se* complaint must meet the basic pleading standards outlined above to survive a motion to dismiss. *Fowlkes*, 790 F.3d at 387 (citing *Twombly*, 550 U.S. at 570).

### IV.  DISCUSSION

The Court holds that the SAC fails to state a claim against Defendant.[4] Plaintiff's discrimination claim does not adequately plead that Defendant intended to discriminate against her on the basis of race. Plaintiff's retaliation claim does not adequately plead a causal connection between protected action and alleged adverse actions. For the reasons described below, Defendant's motion to dismiss is granted, though the Court will afford Plaintiff leave to amend once more.

#### A.  Section 1981:  Intentional Discrimination

Title 42, United States Code, Section 1981 provides: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and

---

[3] Plaintiff indicated that she drafted the SAC and her opposition to Defendant's motion to dismiss with the help of an attorney from the Federal Pro Se Legal Assistance Program. SAC at 1 n.1; Opp. To Def.'s Mot. to Dismiss, ECF No. 34 at 1 n.1. This Court will apply its typical liberal construction of *pro se* filings to Plaintiff's filings even though she has received drafting assistance from an attorney. *See Kubicek v. Westchester County*, No. 08-CV-372 (KMK), 2009 WL 3720155, at *3 n.5 (S.D.N.Y. October 8, 2009) (construing a *pro se* filing liberally, even though some filings were prepared with the assistance of counsel, because no counsel had entered an appearance at the time of the filings).
[4] Plaintiff brings two counts: one for intentional discrimination and one for retaliation. *See* SAC ¶¶ 88–98. In its motion to dismiss, Defendant suggested that the SAC could be interpreted as also alleging a hostile work environment claim. Def.'s Br., ECF No. 30 at 10. Plaintiff did not respond to this argument in her opposition brief, either to embrace or disclaim a hostile work environment theory. As Plaintiff has not argued that the SAC includes a hostile work environment claim, the Court declines to read one into the SAC.

proceedings for the security of persons and property as it enjoyed by white citizens." It thus prohibits racial discrimination "with respect to the enjoyment of benefits, privilege, terms, and conditions of a contractual relationship, such as employment." *Brown v. Montefiore Med. Center*, No. 19 CV 11474 (ALC), 2021 WL 1163797, at *4 (S.D.N.Y. Mar. 25, 2021) (citation omitted). To establish a claim under Section 1981, a plaintiff must allege facts supporting the following elements: (1) the plaintiff is a member of a racial minority; (2) the defendant intended to discriminate on the basis of race; and (3) the discrimination concerned one of the statute's enumerated rights. *Brown v. City of Oneonta*, *N.Y.*, 221 F.3d 329, 339 (2d Cir. 2000).

More particularly, a plaintiff pursuing a Section 1981 claim must plausibly allege that the defendant specifically intended to discriminate on the basis of race. *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 226 (2d Cir. 2004); *Reynolds v. Barrett*, 685 F.3d 193, 201 (2d Cir. 2012) (holding that a plaintiff cannot proceed with a disparate impact theory of liability under section 1981). Successful Section 1981 discrimination claims will allege circumstances "giving rise to a plausible inference of racially discriminatory intent." *Yusuf v. Vassar College*, 35 F.3d 709, 713 (2d Cir. 1994). As a result, conclusory allegations of racial animus are insufficient. *Id.* Additionally, a plaintiff must plead that race was a but-for cause in Defendant's actions. *See Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. 327, 341 (2020) (explaining that a claim under Section 1981 must plausibly allege, and ultimately prove, that "but for race, [Plaintiff] would not have suffered the loss of a legally protected right"). Accordingly, "it is insufficient to merely plead that race was a motivating factor in the discriminatory action." *Brown*, 2021 WL 1163797, at *5.

Here, it is undisputed that Plaintiff is a member of a racial minority, and Defendant does not meaningfully argue that the discrimination did not concern a category enumerated in Section

1981.  SAC ¶ 2.  The Court concludes, however, that Plaintiff has not adequately pleaded that Defendant intended to discriminate against her on the basis of her race and, similarly, that race was a but-for cause of the alleged discrimination.

Plaintiff primarily relies on allegations that she and four white colleagues were placed on "surplus in need" status at the same time and that Defendant had assisted the white colleagues in being removed from this status, but refused to provide such assistance to Plaintiff.  *Id.* ¶¶ 27–29, 90–92.  But she fails to allege facts that support a plausible inference that race was the reason her white colleagues were assisted, when she was not.  "A showing of disparate treatment—that is, a showing that the employer treated plaintiff 'less favorably than a similarly situated employee outside his protected group'—is a recognized method of raising an inference of discrimination." *Mandell v. Cnty. of Suffolk*, 316 F.3d 358, 379 (2d Cir. 2003) (quoting *Graham v. Long Island R. R.*, 230 F.3d 34, 39 (2d Cir. 2000).  In order for a court to draw the inference, however, a plaintiff must allege that she is "similarly situated in all material respects" to the individuals with whom she seeks to compare herself.  *See Radwan v. Manuel*, 55 F.4th 101, 136 (2d Cir. 2022); *see also Johnson v. Andy Frain Services, Inc.*, 638 F. App'x 68, 70 (2d Cir. 2016) (summary order) (affirming Rule 12(b)(6) dismissal of Title VII claim for failure to allege that plaintiff and co-worker had similar job descriptions or responsibilities) (citing *Mandell*, 316 F.3d at 379).  Plaintiff does allege that her white SEV colleagues were similarly situated in that they were placed on "surplus in need status" at the same time.  But she does not allege any further details about those white colleagues, including what positions they ultimately secured; what the qualifications for those positions were; whether Plaintiff also applied for those same positions; and, most importantly, whether Plaintiff was equally as qualified as her colleagues for non-"surplus in need" roles.  Without such details, the Court cannot reasonably infer that Defendant intentionally

discriminated against Plaintiff because of her race. *See Haggood v. Rubin & Rothman, LLC*, No. 14-cv-34L (SJF) (AKT), 2014 WL 6473527, at *12 (E.D.N.Y. Nov. 17, 2017) (dismissing complaint that was "entirely devoid of any details regarding the purported comparators"); *McDowell v. North Shore-Long Island Jewish Health System, Inc.*, 788 F. Supp. 2d 78, 82 (E.D.N.Y. 2011) (holding that stray racist remarks by the plaintiff's co-worker and conclusory allegations that similarly-situated non-black individuals were treated better than the plaintiff did not suffice to state a section 1981 discrimination claim).

Similarly, Plaintiff's allegation that she was not given a ceremonial presentation for a scholarship and reimbursement of travel expenses when two white recipients were fails to allege that the comparators were similarly situated. SAC ¶¶ 58–63. Plaintiff does not, for example, specify whether the scholarship they received was the same as Plaintiff's in all material respects or any other facts that could add to her otherwise bald assertion that a plausible explanation for the different treatment was race. Plaintiff alleges that Defendant told her the presentation ceremony was "only for executives," and that the two white women were not, in fact, executives. *Id.* ¶¶ 61–62. But this allegation merely implies Defendant gave incorrect information about the requirements for a ceremony and does nothing to establish the white employees as similarly-situated comparators, such that an inference of intentional racial discrimination is appropriate.

In the same vein, even taking Plaintiff's operative complaint as true, there are insufficient allegations to support an inference that race was a but-for cause of the alleged discrimination she suffered. With respect to Plaintiff's allegations that she was excluded from projects, *id.* ¶¶ 11–18, she fails to provide facts to support the inference that but for her race she would not have been excluded from those projects. *See Yusuf*, 35 F.3d 713–14 (affirming dismissal of racial discrimination claims under Section 1981 because the plaintiff offered "no reason to suspect that

his being found guilty of sexual harassment had anything to do with his race, other than his assertion that the panel members were white and that he is Bengali"). Likewise, Plaintiff's claim that she was discriminated against because Defendant "covered" for Joe with respect to the alleged July 2021 workstation incident fails. Plaintiff alleges that Defendant's investigation into her complaint about the July 2021 workstation incident concluded that her complaint "was not found to be verified" and that her supervisor said that her workstation was moved as part of a larger relocation of workstations. SAC ¶¶ 65–66. In this allegation, Plaintiff herself has proposed a non-racial explanation for why her work equipment was not at her desk—because it and other office equipment was moved as part of an organizational project. Plaintiff otherwise fails to plead that Defendant intentionally discriminated against her in finding her July 2021 allegations unsubstantiated.

Accordingly, this Court cannot conclude that Plaintiff plausibly pleads allegations giving rise to an inference of discriminatory intent by Defendant and that race was a but-for cause of Defendant's allegedly discriminatory actions. Thus, her Section 1981 discrimination count fails to state a claim and must be dismissed.

    B. Section 1981: Retaliation

To establish a prima facie case of retaliation under Section 1981, Plaintiff must demonstrate that (1) she engaged in protected activity; (2) the defendant was aware of that activity; (3) she was subject to a retaliatory action, or a series of retaliatory actions, that were materially adverse, and (4) there was a causal connection between the protected activity and that materially adverse action or actions. *Carr v. New York City Transit Auth.*, 76 F.4th 172, 180 (2d. Cir. 2023).

It is undisputed that Plaintiff engaged in protected activity in July of 2021 by complaining to her supervisor about Joe's allegedly racially-motivated behavior. SAC ¶ 48, 95; Def.'s Br., ECF No. 30 at 13. Defendant, obviously, was aware of that protected activity. SAC ¶ 48.

The Court must thus turn to the question of whether Plaintiff plausibly alleges that she was subject to a materially adverse retaliatory action. A materially adverse action includes conduct that is "harmful to the point that it could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Duplan v. City of New York*, 888 F.3d 612, 626–27 (2d Cir. 2018) (citation omitted). Examples of such actions include "termination of employment, a demotion evidenced by decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004) (internal citation omitted).[5]

Plaintiff points to four specific actions by Defendant in support of her retaliation claim. Plaintiff claims that she was wrongfully recorded as "absent without leave" during her FMLA time off (which began in approximately September 2021); that she was wrongfully recorded as "absent without pay" when she allegedly was on approved COVID-related leave (in January 2023); that she has not been removed from the "surplus in need" designation; and that she was prevented from being eligible for overtime hours in late 2022 because Defendant failed to inform her she needed to take a refresher course before being eligible for overtime hours. SAC ¶ 96. Only the first two of these allegations plausibly plead a materially adverse action.

---

[5] Although *Feingold* analyzes an employment discrimination claim under Title VII, its analysis is still applicable because "[m]ost of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of § 1981 or the Equal Protection Clause." *Patterson*, 375 F.3d at 225.

Plaintiff's allegations of being wrongfully recorded as "absent without permission" and "absent without pay" plausibly amount to a materially adverse action. Plaintiff alleges that these designations established grounds for her to be disciplined or terminated and made Plaintiff less likely to be transferred or promoted. *Id.* ¶ 81. Although she does not allege she has suffered such negative consequences, the prospect of them could be enough to dissuade a reasonable worker from making a charge of discrimination. *See Duplan*, 888 F.3d at 626–27. Defendant's counterarguments are to no avail. Defendant argues that the alleged recording of Plaintiff as "absent without permission" and "absent without pay" are not adverse actions at all because Plaintiff fails to explain *why* they were wrongful. Def.'s Br., ECF No. 30 at 14. But Plaintiff's allegations *that* these recordings were wrongful is enough to plausibly show that a reasonable person may not want to bring a discrimination claim because Defendant might wrongfully record one's work status, to their detriment.

But Plaintiff's continued status as "surplus in need" does not amount to an adverse action. Plaintiff alleges she was placed on "surplus in need" status around September 2020 and that this placement entailed adverse consequences, including reduced pay and responsibilities. SAC ¶¶ 21, 24. Importantly, in furtherance of her retaliation claim, she further alleges that Defendant has kept her in that status post-July 2021 as retaliation for her protected activity. *Id.* ¶ 96. But Plaintiff's retaliation argument breaks down because, even on the plain allegations of her complaint, she suffered no materially adverse action by remaining in "surplus in need" status after her protected activity. The alleged retaliation of *remaining* in "surplus in need" status does not entail a salary cut, decrease in benefits, or other material loss, and thus cannot be considered to "well dissuade a reasonable worker from making or supporting a charge of discrimination." *Duplan*, 888 F.3d at 626–27. In essence, with respect to her "surplus in need" status, Plaintiff alleges no change to the

13

status quo after her protected activity. *See United States v. N.Y. City Dep't of Educ.*, 407 F. Supp. 3d 365, 404 (S.D.N.Y. 2018) ("It is axiomatic that an adverse employment action cannot serve as the basis for a retaliation claim if the retaliatory action took place prior to the protected activity."). Accordingly, the allegation that she remained on "surplus in need" status even after her protected activity does not suffice as a materially adverse action.

Finally, Plaintiff's allegation that Defendant retaliated against her by failing to inform her of its overtime policy also fails to plausibly allege adverse action. Plaintiff alleges that, upon her returning to work in October 2022, Defendant purposely failed to notify her of its policy that she must take a certain course before she could be eligible for overtime pay and that this failure resulted in Plaintiff being unable to be eligible for overtime compensation. SAC ¶¶ 78, 96. Even taking Plaintiff's allegations as true, she does not plausibly allege how Defendant's inaction was adverse to her. For instance, Plaintiff does not allege that she, in fact, worked overtime or sought to work overtime and was denied premium pay because of Defendant's alleged failure and does not allege that Defendant's actions otherwise materially impacted her. There are no allegations, then, to suggest that Defendant's alleged failure to inform Plaintiff of its training policy amounts to cognizable adverse action.

In sum, Plaintiff's operative complaint plausibly alleges adverse action for Defendant recording Plaintiff as "absent without permission" and "absent without pay," but does not plausibly allege adverse action for Plaintiff's ongoing status in a "surplus in need" designation or for Defendant's alleged failure to notify Plaintiff of its overtime qualifications. The Court therefore proceeds to analyzing whether Plaintiff has plausibly pleaded a causal connection between the two plausible adverse employment actions and Plaintiff's protected activity. It concludes that she has not.

A causal connection in retaliation claims can be shown either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Littlejohn v. City of New York*, 795 F.3d 297, 319 (2d Cir. 2015). In her retaliation claim, Plaintiff does not plausibly allege causation based on a showing of retaliatory animus[6] or disparate treatment, so she must rely on the temporal proximity between her protected activity and the adverse actions. *Id.*

There is no bright line rule in the Second Circuit defining how close in time protected activity must be to the materially adverse action. *Id.* "But in the absence of additional allegations supporting causation, 'mere temporal proximity' must be 'very close' to establish a causal connection between the protected activity and an adverse employment action." *Farooq v. City of New York*, No. 20-3185, 2022 WL 793117, at *4 (2d Cir. Mar. 16, 2022) (summary order) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). Accordingly, a court must "exercise its judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases." *Summa v. Hofstra Univ.*, 708 F.3d 115, 128 (2d Cir. 2013) (quoting *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009)).

Plaintiff's protected activity—her complaint to Defendant about Joe's behavior—occurred in or about July 2021. SAC ¶ 95. Plaintiff does not specify when, exactly, Defendant's "absent without leave" recording occurred, though she alleges it happened when she was on FMLA leave, which she took between approximately September of 2021 and September of 2022. SAC ¶¶ 53, 71, 74. Thus, Defendant's allegedly improper recording occurred between two and fourteen

---

[6] To the extent Plaintiff does allege animus, the Court finds that such allegations are threadbare and conclusory. *See* SAC ¶¶ 68, 82.

15

months after her July 2021 complaint. The alleged "absent without pay" recording occurred in January 2023, approximately 18 months after her July 2021 complaint. *Id.* ¶ 80.

These gaps in time are fatal to Plaintiff's retaliation claim. First, this Court cannot find Plaintiff's 18-month gap for the "absent without pay" recording as sufficient for causation. *See Farooq*, No. 20-3185, 2022 WL 793117, at *4 ("The five-month temporal gap here, standing alone, is insufficient to plead causation."). Similarly, the Court cannot find Plaintiff has adequately pleaded causation for the "absent without leave" recording without any information about when that recording occurred. Although the bottom end of the two-to-fourteen-month range may present compelling arguments in favor of finding causation, the top end would not, and Plaintiff has pleaded nothing to permit the Court to infer the recording took place close in time to her complaint.

Plaintiff's arguments to the contrary do not change the Court's conclusion. Plaintiff concedes that the gaps of time are "normally harmful to causation," but argues that the Court should consider that during much, if not all, of the relevant time gaps, she was on approved leave. Pl.'s Opp. Br., ECF No. 34 at 13. But Plaintiff alleges that Defendant made the improper recording *while* she was on the approved leave, so the Court cannot simply discount that period of time. *See* SAC ¶ 69 ("During Plaintiff's approved FMLA leave period, Defendant wrongfully recorded Plaintiff as being 'absent without leave' for approximately 40 total days."). As this Court exercises its "judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases," *Summa*, 708 F.3d at 128, it concludes the connection between Defendant's various recordings of Plaintiff's leave status and her complaint about Joe's behavior are too attenuated and speculative to plausibly plead causation under Section 1981. Even construing Plaintiff's filings liberally, the Court simply cannot conclude that the July 2021 complaint was "followed closely" by the alleged adverse actions. *Littlejohn*, 795 F.3d at 319.

In sum, Plaintiff's claim for retaliation fails because it does not adequately plead a causal connection between protected action and alleged adverse actions.

## V.     CONCLUSION

For the reasons described herein, Defendant's motion to dismiss Plaintiff's SAC is GRANTED.  While the Court recognizes that Plaintiff has already twice amended her complaint, it grants her leave to file a Third Amended Complaint to attempt to address the deficiencies identified in this ruling, in light of her *pro se* status and the fact that the Court has identified pleading deficiencies, rather than fatal substantive deficiencies, with her claims.  Any such Third Amended Complaint must be filed by September 19, 2024.

**SO ORDERED** at Hartford, Connecticut, this 29th day of August, 2024.

 /s/ Sarala V. Nagala
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE