## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SONYA UNDERWOOD, | ) | 3:23-CV-310 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RTX CORP. f/k/a RAYTHEON | ) | |
| TECHNOLOGIES CORP., | ) | September 30, 2025 |
| *Defendant*. | ) | |

## RULING AND ORDER ON DEFENDANT'S MOTION TO DISMISS THIRD AMENDED COMPLAINT AND PLAINTIFF'S MOTION FOR LEAVE TO AMEND

Sarala V. Nagala, United States District Judge.

In her third amended complaint in this employment discrimination action, *pro se* Plaintiff Sonya Underwood alleges that her current employer, Defendant RTX Corporation, violated her rights under 42 U.S.C. § 1981 by retaliating against her for complaints she made concerning alleged racial discrimination. Defendant has moved to dismiss the third amended complaint ("TAC") without further leave to amend, arguing that Plaintiff has failed to state a claim for retaliation and has had sufficient opportunities to amend. While Defendant's motion was pending, Plaintiff, now represented by counsel, filed a motion for leave to amend to add recently-exhausted federal and state law claims for disability discrimination and retaliation.

For the reasons described below, the Court DENIES Defendant's motion to dismiss as to Counts One and Two of the TAC; GRANTS Defendant's motion to dismiss Count Three of the TAC; and GRANTS Plaintiff's motion for leave to amend, to file a fourth amended complaint.

## I.    PROCEDURAL AND FACTUAL BACKGROUND

### A.  Procedural Background

Plaintiff filed her initial complaint *pro se*, alleging discrimination based on her race, color, sex, and age. *See* ECF No. 1. U.S. Magistrate Judge Vatti recommended that complaint be

dismissed.  ECF No. 9.  Plaintiff objected to the recommended ruling and filed an amended complaint before the Court (Dooley, J.) took action on the recommended ruling.  *See* ECF Nos. 11, 12.  Judge Dooley then adopted the recommended ruling, accepted the amended complaint, and directed Magistrate Judge Vatti to conduct an initial review of the amended complaint.  ECF No. 14.  Magistrate Judge Vatti again recommended dismissal; Judge Dooley adopted his recommendation but allowed Plaintiff another opportunity to amend her complaint because Plaintiff averred that, with the assistance of the Federal Pro Se Program, she believed she could state a viable claim.  ECF Nos. 16, 18.

Following Plaintiff's filing of the second amended complaint, the case was transferred to the undersigned.  ECF No. 20.  In August of 2024, this Court granted Defendant's motion to dismiss Plaintiff's second amended complaint, which alleged claims for racial discrimination and retaliation under 42 U.S.C. § 1981.  *See* Ruling and Order, ECF No. 61; *Underwood v. RTX Corp.*, No. 3:23-CV-310 (SVN), 2024 WL 3988142 (D. Conn. Aug. 29, 2024).  Although Plaintiff had twice been given leave to amend, the Court granted her leave to amend a third time.  *Underwood*, 2024 WL 3988142, at *9.  The operative complaint for purposes of the pending motions is the TAC, ECF No. 66.

B.  Factual Background from TAC[1]

The TAC contains the following allegations, which are accepted as true for the purpose of this motion.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff is a black, female employee trained in aviation engine repair who has worked at Pratt & Whitney, a subsidiary of RTX Corporation, since 2019.  ECF No. 66, ¶¶ 4, 6.  Plaintiff began working as an Engine Quality Inspector in Defendant's Systems Engineering Validation

---

[1] Paragraphs 1–111 of the TAC are largely identical to those same paragraph numbers in Plaintiff's proposed Fourth Amended Complaint ("FAC").  *Compare* ECF No. 66 *with* Proposed Fourth Am. Compl., ECF No. 86-1.

("SEV") Unit in Middletown, Connecticut. *Id.* ¶ 6. Plaintiff was the only black female employee in the SEV Unit. *Id.* ¶ 10. Her responsibilities included troubleshooting aircraft engine part defects during the production process, collaborating with machine operators and mechanics, leading project teams to manage quality notifications, and facilitating communications with suppliers to resolve issues. *Id.* ¶ 8. Plaintiff was qualified for this role, based on her education. *Id.* ¶ 9.

From her first day, Defendant excluded Plaintiff from "projects, payroll," and her questions and responses were "ignored by her predominantly white, predominantly male coworkers." *Id.* ¶ 10. When Plaintiff reported her exclusion to her supervisor, she was told "[t]he men will come around" to including Plaintiff in projects, but this did not happen. *Id.* ¶¶ 11–12.

In or around June of 2020, Defendant identified Plaintiff and four "similarly situated" team members from the Middletown SEV Unit as "surplus in need" employees, due allegedly to the COVID-19 pandemic's negative impact on business. *Id.* ¶ 17. Defendant sent Plaintiff a survey asking whether Plaintiff would volunteer to transfer from her position in the Middletown SEV Unit to another position in Middletown or in East Hartford. *Id.* ¶ 18. All of the "transfer positions" Defendant offered Plaintiff were compensated at pay grades lower than Plaintiff's then-current 05-level pay grade. *Id.* ¶ 18. Plaintiff declined to volunteer to transfer. *Id.* ¶ 19.

In July of 2020, Plaintiff emailed the Director of Human Resources "to complain about the racially discriminatory impact of Plaintiff's designation as 'surplus in need' and transfer to East Hartford" (the "July 2020 Race Discrimination Complaint"). *Id.* ¶ 20. Plaintiff noted she was the only black female employee in the Middletown SEV Unit and asked the Human Resources department to help place her in one of the open positions Plaintiff had identified and was qualified for. *Id.* Plaintiff further complained that, historically, Defendant's employees of color had "accepted demotions/transfers and subsequently been unable to advance because no one, including

Defendant's Human Resources [Department], would help them with promotion or reinstatement." *Id.*

In December of 2020, Defendant transferred Plaintiff from her position in the Middletown SEV Unit, which was compensated at pay grade 05, to a position in East Hartford Aftermarket Operations that was compensated at the lower 06 pay grade, and then at the lower grades 07 and 08. *Id.* ¶¶ 18, 22. Plaintiff's East Hartford position also required fewer skills and was in a less-desirable location, "materially altering Plaintiff's job responsibilities." *Id.* ¶ 23.

Of the five Middletown SEV Unit employees Defendant had designated as "surplus in need" and transferred to East Hartford, three were white males, one was a white female, and Plaintiff was the only black female. *Id.* ¶ 24. Within months of Plaintiff's reassignment, her other white SEV Unit coworkers were reassigned to units out of East Hartford, with assistance from Defendant's Human Resources Department. *Id.* ¶¶ 25–26. But the Human Resources Department declined to help Plaintiff, telling her to simply "go online and apply and something would eventually come up." *Id.* ¶ 28. Plaintiff alleges the Human Resources Department failed to help her in retaliation for her July 2020 Race Discrimination Complaint. *Id.* ¶ 29. Plaintiff applied to more than fifteen positions with Defendant—all of which she was qualified for—but received only one interview and no job offer. *Id.* ¶ 30.

While working in East Hartford, Plaintiff shared a workstation—including a desk, desk chair, computer, and computer accessories—with a first-shift employee, whom Plaintiff later identified as John Waluk (a white male). *Id.* ¶¶ 32–33, 35, 38. Twice in the spring of 2021, Plaintiff's computer mouse went missing from her workstation; the first time, her supervisor, Evan Rodriques, helped her find a replacement, and the second time, he recommended Plaintiff lock up her mouse in a cabinet at the end of her shift. *Id.* ¶¶ 42–45. Around May of 2021, Waluk began

leaving garbage around the workstation. *Id.* ¶ 46. The same month, Plaintiff's chair, computer, keyboard, mouse, and other supplies disappeared, while other coworkers' items remained in place. *Id.* ¶¶ 48, 50–51. Without access to these items, Plaintiff could not perform her job, and experienced emotional distress. *Id.* ¶ 53–54. She had to repeat weeks of work to earn her inspector stamp and could not work overtime until she demonstrated her work assignments could be performed independently. *Id.* ¶ 67. Another employee, Karen Davis, told Plaintiff that Waluk had moved the equipment, with management's consent, "because he did not want to share a desk and computer equipment with a Black person." *Id.* ¶¶ 55–57. When Plaintiff reported this news to Rodriques, he promised to "take it to management." *Id.* ¶ 60.

Plaintiff also reported this incident to her union shop steward, who scheduled a meeting between Plaintiff and a Human Resources Department representative "to discuss Plaintiff's race discrimination charge against John Waluk." *Id.* ¶¶ 61–62. The meeting took place on May 26, 2021 (the "May 2021 Race Discrimination Complaint"). *Id.* ¶ 66. Under Defendant's discrimination and harassment prevention policy, upon receipt of Plaintiff's May 2021 Race Discrimination Complaint, Defendant was required to promptly investigate the complaint and issue a written response. *Id.* ¶ 72. According to Plaintiff, Defendant did not follow its own policy; it failed to interview relevant witnesses including Waluk, Davis, and Rodriques, and failed to timely resolve the complaint. *Id.* ¶ 73. Plaintiff alleges Defendant's failure to properly investigate her May 2021 Race Discrimination Complaint was retaliation for her July 2020 Race Discrimination Complaint. *Id.* ¶¶ 128–129.

Plaintiff took approved leave under the Family Medical Leave Act ("FMLA") between September of 2021 and September of 2022. *Id.* ¶¶ 76, 95. During her FMLA leave, Defendant would not provide Plaintiff with information concerning her May 2021 Race Discrimination

Complaint.  *Id.* ¶¶ 77–78.  Plaintiff was fearful of returning to work in East Hartford, concerned she would be subjected to further racial discrimination without Defendant to "support her or even acknowledge it."  *Id.* ¶ 82.

In early March of 2022, Plaintiff emailed her union representative concerning the events with Waluk underlying her May 2021 complaint (the "March 2022 Race Discrimination Complaint").  *Id.* ¶ 83.  Defendant conducted a cursory investigation of the March 2022 Race Discrimination Complaint the next month, *id.* ¶¶ 84–93, and notified Plaintiff by letter on or about May 18, 2022, that the investigation was complete and Plaintiff's allegation was "not found to be verified," *id.* ¶ 94.  During the investigation, Rodriques claimed that Plaintiff's workstation was moved as part of a larger reorganization done while Plaintiff was on leave, which Plaintiff says is "patently false."  *Id.* ¶ 88.

Between April of 2022 and January of 2023, Defendant incorrectly recorded Plaintiff as absent without leave or permission for more than 40 total days, despite being on FMLA leave.  *Id.* ¶¶ 95–103.  During this time, Plaintiff applied to several open positions, but "had no chance for consideration" because her leave records inaccurately reflected absences without permission.  *Id.* ¶¶ 104.  Plaintiff alleges Defendant wrongfully recorded her leave in retaliation for her May 2021 Race Discrimination Complaint and the later March 2022 Race Discrimination Complaint.  *Id.* ¶ 105.

Based on these factual allegations, Plaintiff states three claims for retaliation under 42 U.S.C. § 1981:  (1) failure to assist with promotion or reinstatement following her December 2020 designation as a "surplus in need" employee and transfer to East Hartford, allegedly in retaliation for her July 2020 Race Discrimination Complaint; (2) inaccurate attendance recording between March/April of 2022 and January of 2023, allegedly in retaliation for all three of her race

discrimination complaints; and (3) failure to investigate her May 2021 and March 2022 race discrimination complaints, allegedly in retaliation for her July 2020 Race Discrimination Complaint.  *Id.* ¶¶ 112–33.  Plaintiff seeks injunctive relief, declaratory relief, and damages (compensatory, punitive, back pay, and front pay).  *Id.*, Prayer for Relief.

C.  Additional Facts from Proposed FAC

On August 27, 2025, Plaintiff, through counsel, moved for leave to amend her complaint to add claims for disability discrimination and retaliation.  Pl.'s Mot. for Leave to Amend, ECF No. 86.  Plaintiff's proposed fourth amended complaint ("FAC"), ECF No. 86-1, contains the facts from her TAC and also alleges the following additional facts.

In or around late 2021, Plaintiff received the COVID-19 vaccine pursuant to Defendant's mandatory vaccination policy for all employees as a condition of continued employment.  ECF No. 86-1 ¶ 112.  Following vaccination, Plaintiff experienced adverse health symptoms over approximately six months that substantially limited her major life activities.  *Id.* ¶ 113.  Around October of 2022, Plaintiff became ill with an unspecified condition and sought medical treatment.  *Id.* ¶ 114.  Plaintiff's physician released her to return to work with unspecified "reasonable accommodations for her physical disability," but Defendant denied her initial request for reasonable accommodations without engaging in the interactive process required under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 1201 et seq.  *Id.* ¶¶ 114–15.

From March through April of 2023, Plaintiff was on approved medical leave.  *Id.* ¶ 116. Between October and December of 2023, Plaintiff provided comprehensive documentation to Defendant's third-party administrator for FMLA and accommodation requests, substantiating her physical disability and need for reasonable accommodations.  *Id.* ¶ 117.  Plaintiff requested the reasonable accommodation of working a hybrid schedule, noting that she could "remain flexible

with working at Defendant's physical location according to business needs." *Id.* ¶ 119. This accommodation would have enabled Plaintiff to perform the essential functions of her position as an Engine Quality Inspector. *Id.* ¶ 120. Although Plaintiff had been granted FMLA leave through March of 2024, Defendant refused to allow her to return to work with her requested reasonable accommodation (which had been recommended by her physician), without engaging in any meaningful interactive process. *Id.* ¶¶ 121–22.

Sometime between mid-February and March of 2024, Defendant mailed Plaintiff a "total and permanent disability form," despite that Plaintiff was not totally and permanently disabled and could perform the essential functions of her job with reasonable accommodation. *Id.* ¶ 123. Plaintiff's repeated inquiries to the Union President concerning her employment status went unanswered. *Id.* ¶ 124. On July 22, 2024, Defendant formally denied Plaintiff's request for a hybrid schedule, claiming that her position could not be performed on such a schedule. *Id.* ¶ 125. Plaintiff claims this response was pretextual, as other similarly situated employees have been permitted to work hybrid schedules or have received similar accommodations. *Id.* ¶ 127.

To Plaintiff's knowledge, she "remains employed by Defendant but has not been permitted to return to work, effectively constructively discharged due to Defendant's failure to provide reasonable accommodations for her disability." *Id.* ¶ 130. She alleges Defendant's failure to accommodate her disability and engage in the interactive process was "done with malice or reckless indifference to Plaintiff's federally protected rights." *Id.* ¶ 131.

In addition to alleging the same three retaliation claims from the TAC, the proposed FAC adds a fourth cause of action for disability discrimination/failure to accommodate under the ADA; a fifth cause of action for retaliation under the ADA; a sixth cause of action for disability discrimination/failure to accommodate under the Connecticut Fair Employment Practices Act

("CFEPA"), Conn. Gen. Stat. § 46a-60(b)(4); and a seventh cause of action for retaliation under the CFEPA. *Id.* at 23–27.

The Court first addresses Defendant's motion to dismiss the TAC, and then addresses Plaintiff's motion for leave to amend.

## <u>DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S TAC</u>

Defendant has moved to dismiss Plaintiff's TAC for failure to state any plausible retaliation claims. The Court holds that while Count Three fails to state a plausible claim for retaliation related to Defendant's alleged failure to adequately investigate the second of Plaintiff's two race discrimination complaints, Counts One and Two state plausible claims for retaliation related to Defendant's alleged failure to help Plaintiff exit surplus in need status and its alleged inaccurate recording of her unauthorized leave. Thus, the Court grants in part and denies in part Defendant's motion to dismiss.

## I.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted. When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.* In undertaking this analysis, the Court must "draw all reasonable

inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief.*" Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted).

The Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008), and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

These pleading standards apply to self-represented parties.  It is true that Courts are under an obligation to extend "special solicitude" to *pro se* litigants and ought to read their pleadings "to raise the strongest arguments they suggest." *Fowlkes v. Ironworkers Local 40*, 790 F.39 378, 387 (2d Cir. 2015) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)) (internal quotation marks omitted).  But at the same time, a *pro se* complaint must meet the basic pleading standards outlined above to survive a motion to dismiss. *Fowlkes*, 790 F.3d at 387 (citing *Twombly*, 550 U.S. at 570).[2]

---

[2] Plaintiff indicated that she drafted the TAC with assistance from the Federal Pro Se Legal Assistance Program, ECF No. 66 at 1 n.1.  Nonetheless, the Court will apply its typical liberal construction of *pro se* filings to Plaintiff's TAC. S*ee Kubicek v. Westchester Cnty*, No. 08-CV-372 (KMK), 2009 WL 3720155, at *3 n.5 (S.D.N.Y. Oct. 8, 2009) (construing a *pro se* filing liberally, even though some filings were prepared with the assistance of counsel, because no counsel had entered an appearance at the time of the filings).  Plaintiff's brief in opposition to Defendant's motion to dismiss, however, was filed by counsel who appeared on her behalf.  Pl.'s Opp. Br., ECF No. 84.  Thus, the Court does not afford the same liberal construction to arguments made in her opposition brief.

## II.    DISCUSSION

The Court holds that Plaintiff has stated plausible claims for retaliation in Counts One and Two of the TAC, but not in Count Three.

Generally, workplace retaliation is actionable under Section 1981. *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 451 (2008). To establish a prima facie case of retaliation under Section 1981, Plaintiff must demonstrate that (1) she engaged in protected activity; (2) the defendant was aware of that activity; (3) she was subject to a retaliatory action, or a series of retaliatory actions, that were materially adverse, and (4) there was a causal connection between the protected activity and that materially adverse action(s). *Carr v. New York City Transit Auth.*, 76 F.4th 172, 180 (2d. Cir. 2023).[3]

### A.    Count One:  Failure to Assist with Removal from Surplus in Need Designation

In Count One, Plaintiff contends that, after she was transferred to East Hartford in December of 2020, Defendant failed to assist her with exiting the surplus in need designation, despite doing so for the white members of her cohort, and failed to promote her to positions for which she was qualified, in retaliation for her July 2020 Race Discrimination Complaint. ECF No. 66 ¶¶ 20, 112–118.

Defendant appears to concede, for purposes of its motion, that Plaintiff's July 2020 complaint is considered protected activity and that it was aware of that protected activity. Nevertheless, Defendant argues that its alleged failure to assist Plaintiff with exiting surplus in

---

[3] In a summary order, the Second Circuit has suggested that the protected activity must be the "but-for" cause of the employer's adverse employment action in a Section 1981 claim. *Spratt v. Verizon Commc'ns Inc.*, 633 F. App'x 72, 73 (2d Cir. 2016) (summary order). An earlier published decision suggests, however, that the more lenient "motivating factor" standard of causation applies to Section 1981. *See Garcia v. Hartford Police Dep't*, 706 F.3d 120, 127 (2d Cir. 2013); *see also Quarless v. Brooklyn Botanic Garden Corp.*, No. 11-CV-5684 (CBA) (RER), 2014 WL 2767085, at *9, n.3 (E.D.N.Y. June 18, 2014). As neither party presents argument about which causation standard applies, the Court does not decide the question. Even applying the more demanding but-for standard, Counts One and Two can proceed, for the reasons discussed in this ruling.

need status and finding her a new position is (1) not a materially adverse action, and (2) that, regardless, Plaintiff has not adequately alleged a causal connection between any alleged adverse action and her protected activity.  The Court disagrees with both contentions.

A materially adverse action includes conduct that is "harmful to the point that it could well dissuade a reasonable worker from making or supporting a charge of discrimination."  *Duplan v. City of New York*, 888 F.3d 612, 626–27 (2d Cir. 2018) (citation omitted).[4]  Anti-discrimination and anti-retaliation provisions are not "'co-terminous'"; "anti-retaliation protection is broader and 'extends beyond workplace-related or employment-related retaliatory acts and harm.'"  *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010) (quoting *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006)).  Still, "[p]etty slights or minor annoyances that often take place at work" do not constitute actionable retaliation.  *Id.* (citation omitted).  In determining whether conduct amounts to an adverse employment action, the alleged actions of retaliation must be considered both separately and in the aggregate.  *Id.*

First, the Court rejects Defendant's arguments that it is bound by its prior decision in *Underwood* under the law of the case doctrine.  The Court previously held that remaining in surplus in need status was not a materially adverse action, where Plaintiff alleged that she was put on surplus in need status before she engaged in protected activity, and then remained on surplus in need status after her alleged protected activity.  *Underwood*, 2024 WL 3988142, at *6–7.  It stated, in relevant part:

> The alleged retaliation of *remaining* in "surplus in need" status does not entail a salary cut, decrease in benefits, or other material loss, and thus cannot be considered to "well dissuade a reasonable worker from making or supporting a charge of discrimination."  *Duplan*, 888 F.3d at 626–27.  In

---

[4] Although *Duplan* analyzes a retaliation claim under Title VII, its analysis is still applicable because "[m]ost of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of § 1981 or the Equal Protection Clause."  *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004).

essence, with respect to her "surplus in need" status, Plaintiff alleges no change to the status quo after her protected activity.  *See United States v. N.Y. City Dep't of Educ.*, 407 F. Supp. 3d 365, 404 (S.D.N.Y. 2018) ("It is axiomatic that an adverse employment action cannot serve as the basis for a retaliation claim if the retaliatory action took place prior to the protected activity.").  Accordingly, the allegation that she remained on "surplus in need" status even after her protected activity does not suffice as a materially adverse action.

*Id.* at *7.

In her TAC, however, Plaintiff has alleged protected activity that occurred *before* she was placed on surplus in need status—her July 2020 Race Discrimination Complaint—and has argued that the adverse action of Defendant's failure to assist her with moving out of the surplus in need status to any of several other positions for which she was qualified, occurred *after* she made her complaint.[5]  As such, the Court's previous decision is inapplicable here, and does not bind it now.

Plaintiff claims that Defendant assisted her other colleagues who had been designated surplus in need with obtaining new positions, but did not assist her, attributing this disparate treatment to her complaint about racial discrimination about six months earlier.  Drawing all reasonable inferences in favor of Plaintiff—as the Court must at the motion to dismiss stage—the Court holds that Plaintiff has plausibly pleaded an adverse action for purposes of her retaliation claim in Count One.  First, cases within this Circuit recognize that denial of a promotion could dissuade a reasonable worker from making or supporting a charge of discrimination, if the employee makes a showing that she was qualified for the position(s) she sought.  *See, e.g.*, *Hinton v. City Coll. of N.Y.*, No. 05-CV-8591 (GEL), 2008 WL 591802, at *25 (S.D.N.Y. Feb. 29, 2008) (Lynch, U.S.D.J.) ("it cannot be doubted that a denial of a promotion is the sort of adverse action that could 'dissuade[] a reasonable worker from making or supporting a charge of

---

[5] As a result of this reframing and the new allegations regarding the timing of the protected activity, the Court concludes that it is not bound by its prior ruling under the law of the case doctrine.

discrimination'") (quoting *Burlington*, 548 U.S. at 68); *Byrne v. Telesector Res. Grp., Inc.*, No. 04-CV-0076S, 2007 WL 962929, at *10 (W.D.N.Y. Mar. 29, 2007) (finding that a concern that a promotion for which one is qualified might be delayed for a year could dissuade a reasonable worker from engaging in protected activity). Insofar as Plaintiff frames her retaliation claim as one of failure to promote her into a non-surplus in need position—and because she alleges she was qualified for many positions but did not advance in those searches, *see* ECF No. 66 ¶ 30—the Court holds that Plaintiff has adequately alleged a materially adverse action.

Likewise, Plaintiff has adequately alleged that Defendant's failure to assist her with obtaining a new position, when it assisted her similarly-situated colleagues, *id.* ¶ 28, is also a materially adverse action for purposes of a retaliation claim. Although this allegation is one step removed from a failure to promote, the prospect of not receiving assistance from a Human Resources Department to move out of a less desirable job status into a more desirable one could dissuade a reasonable worker from complaining of discrimination, especially when others in Plaintiff's cohort were given said help and successfully found positions.

Plaintiff has also sufficiently alleged a causal connection between her July 2020 Race Discrimination Complaint and Defendant's alleged failure to promote or assist her with obtaining a new position.[6] A causal connection in retaliation claims can be shown either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the

---

[6] Defendant is correct that Plaintiff cannot plausibly claim that she was placed on surplus in need status because of her July 2020 complaint, given that she alleges that she was designated as a surplus in need employee in June of 2020, *before* her July 2020 complaint.

plaintiff by the defendant." *Littlejohn v. City of New York*, 795 F.3d 297, 319 (2d Cir. 2015) (citation omitted).

There is no bright line rule in the Second Circuit defining how close in time protected activity must be to the materially adverse action. *Id.* "But in the absence of additional allegations supporting causation, 'mere temporal proximity' must be 'very close' to establish a causal connection between the protected activity and an adverse employment action." *Farooq v. City of New York*, No. 20-3185, 2022 WL 793117, at *4 (2d Cir. Mar. 16, 2022) (summary order) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)).  Accordingly, a court must "'exercise its judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases.'" *Summa v. Hofstra Univ.*, 708 F.3d 115, 128 (2d Cir. 2013) (quoting *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009)).

Plaintiff's protected activity—her complaint to Human Resources that Defendant's decision to place her on surplus in need status was racially discriminatory and that historically, Defendant's employees of color were not assisted with promotion or reinstatement after accepting demotions or transfers—occurred on or about July 20, 2020.  ECF No. 66 ¶ 20.  Plaintiff alleges that, "[w]ithin months" of her reassignment to East Hartford in December of 2020, and specifically in February of 2021, she noticed that her coworkers had been assigned to other positions out of East Hartford with the help of the Human Resources Department, while she was not so assisted. *Id.* ¶¶ 25–26, 31.  Thus, the time period between Plaintiff's complaint and the alleged retaliatory activity is approximately seven months.  This temporal proximity, when combined with the allegation that Plaintiff complained about the exact type of treatment of employees of color that she claims to have personally experienced as a result of the complaint, demonstrates that, for

purposes of a motion to dismiss, Plaintiff's allegations of causation are sufficient to state a plausible retaliation claim.

With respect to Plaintiff's retaliation through failure-to-promote allegations, she has also sufficiently alleged that she applied to more than fifteen jobs for which she was qualified, but did not receive any of them. *Id.* ¶ 30. Unlike in *Gupta v. City of Bridgeport*, No. 3:14-CV-112 (MPS), 2015 WL 1275835 (D. Conn. Mar. 19, 2015), upon which Defendant relies, Plaintiff has alleged that she applied to several positions she was qualified for, and does not merely assert that she generally requested non-specific promotions. Moreover, although Defendant contends that Plaintiff needs to allege that her other similarly-situated colleagues did *not* engage in protected activity to state a retaliation claim, it cites no authority for that proposition. To the extent Defendant relies on the Court's previous discussion of the requirement to plead that the plaintiff is similarly situated to others, that discussion was relevant to Plaintiff's now-withdrawn intentional racial discrimination claim under Section 1981, not her retaliation claim. *See Underwood*, 2024 WL 3988142, at *5.

For these reasons, Defendant's motion to dismiss Count One of Plaintiff's TAC is denied. Of course, should the evidence developed in discovery fail to support an inference of retaliation, Defendant is free to argue as much on summary judgment.

B.  Count Two:  Inaccurate Attendance Recording

The Court previously held that Plaintiff's allegations of being wrongfully recorded as absent without permission suffice as an adverse action. *Id.* at *7. Defendant does not challenge this holding, but contends that Plaintiff fails to plausibly plead a causal relationship between her protected activity and the alleged inaccurate recording of her attendance. The Court holds that

Plaintiff has adequately pleaded a causal relationship between her March 2022 Race Discrimination Complaint and Defendant's allegedly inaccurate recording of her attendance.[7]

To start, Plaintiff has cured one of the deficiencies the Court identified with respect to her second amended complaint, in that she now alleges the dates of the miscoding: it allegedly occurred between late March of 2022 and January of 2023. ECF No. 66 ¶¶ 96–103. Plaintiff also sufficiently connects the miscoding to her third complaint of racial discrimination, which she made to the union president in March of 2022, *id.* ¶ 83, and which the union president in turn conveyed to Defendant in April of 2022, *id.* ¶ 96. Even crediting Defendant's argument that it could not have retaliated against Plaintiff with respect to her March 2022 timesheets when it was not informed of her racial discrimination complaint until April of 2022, Plaintiff sufficiently alleges close temporal proximity, and thus the requisite causal connection, between Defendant's knowledge of the complaint in April of 2022 and repeated instances of alleged miscoding starting that very month and continuing until January of 2023. *Id.*; *see also id.* ¶¶ 97–103.

Thus, the Court denies Defendant's motion to dismiss Count Two of the TAC.

C. Count Three: Failure to Investigate

Finally, Defendant challenges the causal connection between Plaintiff's protected activity and its alleged failure to adequately investigate Plaintiff's May 2021 and March 2022 complaints of racial discrimination. The Court agrees that Plaintiff fails to adequately show a causal

---

[7] The Court agrees with Defendant that Plaintiff has conceded there is no causal connection between Defendant's allegedly inaccurate coding and Plaintiff's July 2020 and May 2021 Race Discrimination Complaints, as she does not address these complaints in her briefing.

connection for this claim of retaliation, and thus grants Defendant's motion to dismiss as to Count Three.

As Defendant correctly notes, "an employer's failure to investigate a complaint of discrimination cannot be considered an adverse employment action taken in retaliation for the filing of the same discrimination complaint." *Fincher v. Depository Tr. and Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010). As Plaintiff frames Count Three as alleging that Defendant failed to investigate her May 2021 and March 2022 racial discrimination claims in retaliation for her July 2020 Race Discrimination Complaint, the Court examines the causal relationship between her July 2020 complaint and the investigations resulting from the May 2021 and March 2022 complaints.[8]

There is insufficient temporal proximity between Plaintiff's July 2020 complaint and the two investigations to raise an inference of retaliation, standing alone. *See Farooq*, 2022 WL 793117, at *4 (holding that a five-month temporal gap between the protected activity and the alleged retaliation was insufficient). The alleged failure to adequately investigate the May 2021 complaint was ten months after the July 2020 protected activity, and the alleged failure to adequately investigate the March 2022 complaint was roughly twenty months after the protected activity. Plaintiff cannot seriously contend that these gaps in time are sufficient to establish causation through temporal proximity alone.

Instead, Plaintiff claims Defendant's alleged deviations from its normal procedures for investigating complaints of discrimination, such as failing to interview important witnesses,

---

[8] In its reply brief, Defendant claims to have made an argument in its opening brief that an alleged failure to investigate adequately "is not an actionable adverse action because it did not dissuade [Plaintiff] from engaging in protected activity." Def.'s Reply Br., ECF No. 85 at 7. While Defendant states that "Pratt's alleged deficient investigations in no way dissuaded Plaintiff from engaging in protected activity," Defendant's opening brief provides no legal support for this statement. Def.'s Mot., ECF No. 71-1 at 15. Since only this conclusory statement appears in Defendant's opening brief, the Court declines to consider an argument made for the first time in reply. *See Connecticut Bar Ass'n v. U.S.*, 620 F.3d 81, 91 n.13 (2d Cir. 2010) ("Issues raised for the first time in a reply brief are generally deemed waived.").

support an inference of retaliatory animus.  In support of this proposition, Plaintiff cites only to out-of-circuit case law, including a Massachusetts state court case and a First Circuit opinion.  Both cases are distinguishable, and neither is binding on this Court.  The Massachusetts case, *Dartt v. Browning-Ferris Indus., Inc. (Mass.)*, 427 Mass. 1, 16 (1998), arose in the context of a motion for judgment notwithstanding a jury's verdict on a disability *discrimination* claim, where there was evidence of a deviation from termination procedures, not a deviation from investigatory procedures.  And *Kouvchinov v. Parametric Tech. Corp.*, 537 F.3d 62, 68 (1st Cir. 2008) does not address a retaliation claim, so it is inapposite here.  In any event, the Court cannot conclude that alleged deviations from policy occurring so remotely in time from the alleged protected activity raise an inference of retaliation.

Even crediting Plaintiff's assertions that Defendant's investigations into her May 2021 and March 2022 complaints were inadequate, she has failed to adequately connect those allegedly flawed investigations to her original complaint of racial discrimination in July of 2020.  Simply put, she has failed to plead any facts to suggest Defendant failed to adequately investigate her two later complaints because of her much earlier first complaint.  Thus, Count Three is dismissed.  As Plaintiff has been granted sufficient opportunities for leave to amend her Section 1981 retaliation claims, she will not be given leave to amend this claim.

D.  <u>In Sum</u>

In sum, the Court grants Defendant's motion to dismiss in part, as to Count Three, but denies it as to Counts One and Two.  The Court proceeds to consider whether Plaintiff should be granted leave to amend to add her claims for disability discrimination and retaliation.

## PLAINTIFF'S MOTION FOR LEAVE TO AMEND

The Court grants Plaintiff's motion for leave to amend to add her claims for disability discrimination and retaliation.

Under Federal Rule of Civil Procedure 15(a)(2), a court should "freely give leave" to amend "when justice so requires." Under Rule 15(a)(2), "the only 'grounds on which denial of leave to amend has long been held proper' are upon a showing of 'undue delay, bad faith, dilatory motive, [or] futility.'" *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 115 (2d Cir. 2021) (quoting *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC,* 797 F.3d 160, 190 (2d Cir. 2015)). The decision whether to grant leave to amend is within the "sound discretion" of the district court. *WC Cap. Mgmt., LLC v. UBS Sec., LLC*, 711 F.3d 322, 334 (2d Cir. 2013).

Here, Defendant does not contend that Plaintiff's proposed new claims are futile, but instead argues that Plaintiff's motion for leave to amend should be denied because she unduly delayed in bringing the new claims; because Defendant would be prejudiced by the amendment; and because allowing amendment at this stage would frustrate judicial economy. *See* Def.'s Opp. Br., ECF No. 87 at 4–6.

Although the Court acknowledges that this case has been pending for some time, it cannot find that leave to amend is unwarranted under the liberal Rule 15 standard. First, Plaintiff only recently exhausted her administrative remedies related to the disability discrimination and retaliation claims in August of 2025, and moved to amend to add those claims a mere one week later. *See* ECF No. 86 at 1, 3–5. Thus, Plaintiff cannot be fairly accused of undue delay. To the extent Defendant believes it would be prejudiced by the amendment in the sense that the Court would not rule on its pending motion to dismiss the TAC, the Court *has* ruled on the merits of the motion to dismiss as part of this opinion. And while the Court appreciates Defendant's concern

for judicial economy, the Court is obligated to allow claims that meet the pleading standards to proceed.

For these reasons, the Court grants Plaintiff's motion for leave to amend, except that Plaintiff's fourth amended complaint shall not include Count Three, Plaintiff's retaliation claim that has been dismissed through this ruling.

## III. CONCLUSION

For the reasons described herein, Defendant's motion to dismiss Plaintiff's third amended complaint is granted in part as to Count Three and denied in part as to Counts One and Two. Plaintiff's motion for leave to amend to add Counts Four through Seven from the proposed fourth amended complaint is granted.

By October 7, 2025, Plaintiff shall docket the fourth amended complaint, removing Count Three and with the addition of Counts Four through Seven. To reduce confusion as this case moves forward, Plaintiff shall omit Count Three from her causes of action in her fourth amended complaint, and plead only Counts One, Two, and Four through Seven. Plaintiff shall indicate that Count Three has intentionally been omitted.

Additionally, discovery may resume. Defendant shall respond to Plaintiff's Second Set of Discovery Demands by October 21, 2025. *See* Order, ECF No. 83. Additionally, by October 21, 2025, the parties shall file a discovery plan, proposing a schedule for remaining discovery in this action and dispositive motions.

**SO ORDERED** at Hartford, Connecticut, this 30th day of September, 2025.

 */s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE